OPINION
Defendant-appellant, Wendell Cruse, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of robbery, both third degree felonies, pursuant to defendant's guilty plea. Because the trial court properly accepted defendant's guilty plea, properly denied defendant's motion to withdraw his guilty plea, and properly sentenced defendant, we affirm.
By indictment filed September 13, 2000, in case No. 00CR-09-5470, defendant was charged with one count of robbery in violation of R.C.2911.02, a felony of the second degree, and one count of robbery in violation of R.C. 2911.02, a felony of the third degree. The charges arose out of an incident on September 4, 2000, at a Meijer store. The matter was scheduled for a pretrial hearing on October 24, 2000, and for trial on November 15, 2000. On October 23, 2000, defendant secured release pursuant to the bond set by the court.
At the pretrial hearing, the trial date was reset for December 18, 2000, due to defense counsel's schedule. On December 18, 2000, however, defendant's counsel withdrew representation, and the court appointed counsel to represent defendant at trial. Accordingly, by entry filed December 21, 2000, the matter was continued to February 12, 2001 for trial. The entry indicates "defendant wishes to hire counsel."
By indictment filed November 22, 2000, in case No. 00CR-11-6717, defendant was charged with one count of second degree robbery and one count of third degree robbery, all in violation of R.C. 2911.02, for events arising out of an October 26, 2000 incident. The case was scheduled for trial February 12, 2001.
On the scheduled trial date, defendant entered a guilty plea to each of the third degree felonies in the two indictments, and the prosecution entered a nolle prosequi on the second degree felonies. The trial court ordered a presentence investigation, and set the matter for sentencing on April 13, 2001. Following two continuances, the trial court, on April 23, 2001, sentenced defendant to three years on one robbery count, four years on the other count, and ordered the terms be served consecutively. Defendant appeals, assigning the following errors:
ASSIGNMENT OF ERROR NUMBER ONE:
 THE TRIAL COURT ERRED WHEN IT ORDERED THE TWO SENTENCES ON THE FELONY CONVICTIONS TO BE SERVED CONSECUTIVELY WITHOUT MAKING THE PROPER FINDINGS SUPPORTED BY THE UNDERLYING REASONS.
ASSIGNMENT OF ERROR NUMBER TWO:
 THE TRIAL COURT DID NOT PROPERLY INQUIRE INTO THE DEFENDANT'S CONCERNS REGARDING THE PERFORMANCE OF HIS ATTORNEY AND ERRED BY NOT GRANTING THE DEFENDANT'S REQUEST FOR A CONTINUANCE.
ASSIGNMENT OF ERROR NUMBER THREE:
 THE DEFENDANT'S GUILTY PLEA WAS NOT KNOWINGLY AND VOLUNTARILY GIVEN AND THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO WITHDRAW HIS PLEA, WHICH WAS MADE BEFORE SENTENCING.
Defendant's first assignment of error asserts the trial court failed to make the requisite findings to support consecutive sentences. Former R.C. 2929.14(E)(4) and both former and current R.C. 2929.19(B)(2)(c) authorized the trial court to impose consecutive sentences under selected circumstances. Former R.C. 2929.14(E)(4), in effect at the time of defendant's crimes, stated:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Former and current R.C. 2929.19(B)(2) provides:
 The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]
Accordingly, not only must the trial court specify its findings from among those set forth in former R.C. 2929.14(E)(4), but it must also specify one of the findings set forth in former R.C. 2929.14(E)(4)(a), (b), or (c). Further, the court must specify its reasons in support of those findings pursuant to both former and current R.C. 2929.19(B)(2)(c).
Here, the trial court imposed consecutive sentences because "consecutive sentences are necessary to protect the public from future crime and punish you and the sentences not disproportionate to the seriousness of the crime and the danger you pose to the public. Obviously you were under indictment when this offense occurred. Your history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime from you." (Sentencing Tr. 15-16.)
The trial court's explanation met all the requisites of former R.C.2929.14(E)(4), including one of the subdivisions (a), (b), or (c). In addition, the trial court explained the reasons for its findings: "[a]s you well know, you're a career criminal. You committed a robbery after four days of being released." (Id. at 15.) The trial court further supported its findings with the presentence investigation that revealed defendant's significant criminal history, as well as the findings set forth on its worksheet, both of which the trial court incorporated into its judgment entry. Thus, even if the reasons set forth in the transcript be insufficient to support the trial court's findings, the judgment entry supplies the necessary reasons. See State v. Beal (2001), Franklin App. No. 01AP-170; State v. Black (2001), Franklin App. No. 00AP-895; State v. Hess (1999), Franklin App. No. 98AP-983. Because the trial court made the requisite findings and supported the findings with its reasons, we overrule defendant's first assignment of error.
Defendant's second assignment of error asserts the trial court erred in not granting his request for a continuance. On the date scheduled for trial, defendant requested a continuance; the trial court refused it. Defendant subsequently entered guilty pleas to the two robbery counts.
"A criminal defendant who enters a voluntary plea of guilty while represented by competent counsel waives all nonjurisdictional defects in prior stages of the proceedings." State v. Durst (1989), Montgomery App. No. 11384, citing Ross v. Common Pleas Court of Auglaize County (1972),30 Ohio St.2d 323. Because defendant entered guilty pleas, he waived any error in the trial court's refusing to grant his requested continuance.
We note defendant at one point requested the opportunity to enter a no contest plea. The trial court stated: "No Mr. Cruse. I have guilty plea forms here. Do you have a problem with the plea? [Defendant] No, sir." The court then explained: "[W]hen I said you can't plead no contest, these are guilty pleas here to lesser offenses. If you want to plead no contest, I don't have no contest pleas in front of me. It is a whole different thing. It's not going to be discussed if you don't — if you want to plead no contest, you have a right to plead no contest to the indictment. But there has been no discussion with respect to a plea of no contest to a lesser charge. Do you understand that? [Defendant] Yes, sir." (Tr. 32.)
Thereafter, defendant did not request the opportunity to plead no contest. Nor did the trial court indicate it would not accept a no contest plea; rather, it suggested such a plea had not been discussed in the context of the plea agreement and therefore would likely involve a no contest plea to the indicted offenses. Given those circumstances, we cannot conclude the trial court precluded defendant from entering a no contest plea that would have preserved the issue arising out of the denial of defendant's request for a continuance. Cf. State v. Nezvalova, Franklin App. No. 00AP-1246, 2002-Ohio-3081 (concluding trial court's refusal to allow defendant to enter no contest plea to indicted offenses was reversible error). Rather, defendant entered the guilty plea so he would not have to plead no contest to the indicted second degree felonies. In doing so, defendant's guilty plea waived any error in the trial court's refusing to grant a continuance. Defendant's second assignment of error is overruled.
In the third assignment of error, defendant not only contests the voluntariness of the guilty plea he entered, but also asserts the trial court erred in refusing to grant his motion to withdraw that guilty plea.
Crim.R. 11(C)(2) sets forth the procedural requirements for accepting a plea of guilty. This court has stated that the procedural requirements in Crim.R. 11(C) are consistent with constitutional protections afforded a defendant. See State v. Duff (2000), Franklin App. No. 00AP-466. Thus, the analysis under Crim.R. 11 addresses as well defendant's due process guarantees under both the Ohio and United States Constitutions. Id.
Crim.R. 11(C)(2)(a) requires a trial court personally to tell a defendant entering a guilty plea about constitutional guarantees he or she foregoes by entering a guilty plea, as well as certain other nonconstitutional matters. State v. Nero (1990), 56 Ohio St.3d 106, 107; State v. Johnson (1988), 40 Ohio St.3d 130, 132-133, certiorari denied (1989), 489 U.S. 1098, 109 S.Ct. 1574; State v. Hughes (2001), Franklin App. No. 01AP-196. Constitutional rights incorporated into Crim.R. 11(C) include the Fifth Amendment privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. Nero at 476, citing Boykin v. Alabama (1969),395 U.S. 238, 242-243, 89 S.Ct. 1709.
In determining whether a plea must be vacated due to a trial court's failure to follow Crim.R. 11(C)(2), a reviewing court utilizes different tests depending on whether the challenge to the plea concerns a constitutional or nonconstitutional element of the rule. Strict compliance with Crim.R. 11(C) is required regarding critical constitutional rights. State v. Colbert (1991), 71 Ohio App.3d 734,737; State v. Ballard (1981), 66 Ohio St.2d 473, paragraph one of the syllabus; State v. Williams (1989), 65 Ohio App.3d 70, 73; Hughes, supra; State v. Patterson (1994), Trumbull App. No. 93-T-4826. A defendant need not be advised in the exact language of Crim.R. 11(C), but a defendant must be informed of the critical constitutional rights in a manner reasonably intelligible to that defendant. Ballard, paragraph two of the syllabus; Williams, supra. A trial court's failure to comply strictly with the rule is prejudicial error. See, e.g., State v. Tabasko (1970), 22 Ohio St.2d 36, certiorari denied (1971), 400 U.S. 998,91 S.Ct. 452.
Where a challenge to a plea involves the trial court's failure to instruct the defendant about nonconstitutional matters, substantial compliance with Crim.R. 11(C) will suffice. Nero at 108, citing State v. Stewart (1977), 51 Ohio St.2d 86, 92-93; Colbert, supra; Hughes, supra. A trial court substantially complies with the rule when under the totality of the circumstances a defendant subjectively understands the implications of his plea and the rights he is waiving. Nero, supra; Hughes, supra. Moreover, where a challenge to the plea concerns a nonconstitutional matter, a defendant must establish prejudice: the plea otherwise would not have been made. Nero, supra; Stewart, supra.
Here, defendant does not point to any omission in the court's inquiry regarding the rights afforded a criminal defendant and a waiver of those rights pursuant to a guilty plea. To the contrary, the trial court complied with the requisites of Crim.R. 11 in addressing defendant and ascertaining that defendant was entering the plea knowingly, intelligently, and voluntarily. Indeed, at the conclusion of the inquiry, the trial court asked defendant: "Are you entering these pleas voluntarily? [Defendant] Yes, sir." (Tr. 33.) Despite the trial court's complying with the requisites of Crim.R. 11, defendant contends his plea was involuntary because he was not granted the requested continuance.
Factually, the matter came to the trial court's attention as voir dire was about to begin on the day of trial. Introduced by his counsel, defendant asked the trial court for a continuance. When the court inquired why defendant needed a continuance, defendant responded that (1) he was not dressed for trial, (2) defense counsel needed to get "other information," and (3) some "other issues" may be involved. (Tr. 6.) Defendant concluded, however, by stating, "[a]ll right. I'm just trying to resolve it as quickly as possible, and with as — minimize the damage to myself. That's all I'm trying to do here." (Id.)
The trial court denied the continuance, but noted defendant's contention that at most he was guilty of theft offenses, not robberies. The trial court advised defendant the jury was there to decide that issue. Accordingly, the trial court advised defendant it was ready to bring the jury into the courtroom.
At that point, defendant interposed a request to represent himself. Defendant explained he had requested that before, and instead counsel was appointed for him. Defendant contended he had never asked for appointment of an attorney, but asked to get his own attorney. Defendant ended his request with the following: "If I can't have a continuance so that I can properly prepare, then I would like to represent myself, sir." (Tr. 8.)
In response, the trial court noted defendant's inexperience, and asked how he intended to adequately represent himself. In response, defendant asked the trial court to appoint an attorney to assist him. The trial court refused, as it had already appointed an attorney to assist defendant. Defendant, however, replied that defense counsel was his "acting attorney of record. I need to be appointed an attorney of record to represent myself." (Tr. 9.) The trial court advised that if defendant was going to represent himself, he would have to do so alone, and suggested that would be a "very bad idea"; defendant admitted "it is." (Id.) Defendant again asked for a continuance; the trial court denied it and brought in the jury.
Following an adjournment, the afternoon session began with the prosecution advising the trial court defendant wished to change his plea to guilty to the two third degree felony robberies in the two indictments under cases 00CR-09-5470 and 00CR-11-6717. As the trial court began the Crim.R. 11 inquiry, defendant interposed a question about the possibility of being screened for "CBCF," the community based correction facility. The trial court advised that, given defendant's record, the trial court intended to put him in the penitentiary. Defendant began to contest the validity of his alleged criminal record, and the trial court informed defendant that its sole purpose was to determine whether defendant wanted to enter the plea. Defendant responded that he did not, but he had no choice. The trial court replied that if defendant did not want to enter the plea, the trial would proceed. Defendant explained the "Catch-22": "I didn't rob in the sense those are thefts. But I have to plead to a robbery or be forced to take it to a jury trial where I can conceivable [sic] go to the pen for a lot longer. I don't think that is justice." (Tr. 17.)
When the court advised it would bring in the jurors, defendant protested:
Defendant: What are we doing right now?
Court: Going forward with the jury trial.
Defendant: Why?
 Court: You said you didn't do it. I will not accept the plea.
 Defendant: I didn't say I didn't do it. I said I didn't commit a robbery.
 Court: I will not have you plead guilty to a robbery that you didn't commit.
 Defendant: I will plead guilty to the charges. Why are you forcing me to go through with a jury trial? I don't understand this. I don't understand. (Tr. 19.)
Defendant protested further, explaining he had accepted the plea and did not wish to go forward with a jury trial. The trial court told defendant he had two choices: to sit in jail while the trial proceeded, or to sit in the courtroom. Defendant again protested, stating he did not want a jury trial. Defendant again inquired: "Why are you forcing me to go to a jury trial? You won't let me represent myself, and now you're forcing me to go to a jury trial. I can't go with a jury trial. I will not have a jury trial in this matter. I will not proceed with a jury trial." (Tr. 20.)
In response, the trial court attempted to explain that it did not want people to be convicted of things they did not do. The trial court told defendant he had a right to a jury trial and because he said he did not commit the crimes, the trial court stated it was not going to accept a plea to the two robberies. Defendant, however, advised that "[a]ll I want to do is get it over with, Judge Crawford, as quickly as possible without, if I can, limiting the amount of time I spend in the pen." (Tr. 23.) Defendant also revealed his attorney had informed him that based on the victim's testimony, the testimony of the police officers, and the video, in all likelihood defendant would be found guilty on both counts in the indictment. "For that reason, I'm accepting the plea agreement. All right." (Tr. 23-24.) Indeed, defendant stated "that in the course of committing the theft offense, that there is every possibility that I did, indeed, commit a robbery because of my actions." (Tr. 26.) Ultimately, defendant entered the guilty plea and the trial court accepted it.
At the sentencing hearing on April 23, 2001, defendant orally moved the court to withdraw his guilty plea. In support, defendant contended that he was not guilty of robbery, but only of theft, that he had not been dressed for trial, that his attorney was not prepared to go to trial, and that he had been denied the requested continuance, all of which rendered his plea involuntary. The trial court refused to allow defendant to withdraw his guilty plea and sentenced defendant.
Defendant's arguments about the involuntariness of his guilty plea due to the denied continuance are unpersuasive. As noted, defendant entered a guilty plea, not a no contest plea. "A plea of guilty is a waiver of independent claims, including constitutional claims." State v. Whiting (1995), Hamilton App. No. C-940149. Because defendant entered a guilty plea and waived the propriety of the trial court's denying his requested continuance, he arguably cannot raise through the issue of "voluntariness" that which defendant failed to preserve with a no contest plea.
Moreover, even if we address defendant's requested continuance, the record reveals defendant presented the trial court with no valid premise for a continuance. While defendant posed several reasons for wanting a continuance, none supported his request. Defendant contended he needed a continuance so his attorney could prepare. At the beginning of the proceedings, however, defense counsel indicated "[w]e have one case set for trial today. And I think I'm prepared to go to trial." (Tr. 3.) Defendant indicated he needed a continuance to explore other issues, but failed to specify the issues. Similarly, defendant requested a continuance because his attorney needed to gather additional information, but defendant did not specify what information.
Only after the continuance was denied did defendant request the opportunity to represent himself, explaining that he would need additional time to prepare for trial. When pressed, defendant admitted that he was not capable of representing himself, that representing himself was a bad idea, and that he would need appointed counsel. Because the trial court had already appointed counsel, the trial court properly refused to appoint additional counsel. Moreover, the trial court was not obliged to believe defendant wanted self-representation, when his request obviously was premised on a desire to avoid trial that day.
In the final analysis, because defendant presented no valid or specific reason for needing a continuance, the trial court within its discretion, properly denied it. See State v. Unger (1981), 67 Ohio St.2d 65, 67-68; see, also, City of Cleveland v. Dillingham (1995), Cuyahoga App. No. 67693. Defendant then was faced with the stark reality of either pleading guilty pursuant to the plea bargain the state offered, or going to trial. "The fact that a defendant is openly presented with unpleasant alternatives does not render a guilty plea involuntary." State v. Gibbs (1997), Washington App. No. 96CA44, citing Bordenkircher v. Hayes (1978), 434 U.S. 357, 365, 98 S.Ct. 663.
Defendant's contentions that his plea was involuntary fail also because of the factual underpinning to the guilty plea. The trial court's position was abundantly clear: it was willing to go to trial. Defendant begged the trial court to allow him to enter a plea and further admitted his guilt. Defendant's contentions of involuntariness are anomalous when he requested, and in fact demanded, the opportunity to enter a plea and avoid the consequences of trial. Cf. State v. Lima (2002), Franklin App. No. 01AP-774 (concluding defendant waived "his right to proceed on the motion to withdraw his guilty plea by indicating to the trial court he wanted to proceed to sentencing"). Defense counsel had advised defendant of the likely consequences of trial; defendant admitted his goal was to minimize his time in the penitentiary, and exposure at trial would have enhanced, not diminished, that aspect of the proceedings. "[A] guilty plea entered to avoid a greater penalty is not rendered involuntary even if a defendant maintains that he is innocent." Id., citing State v. Ransom (1999), Franklin App. No. 98AP-1613.
Finally, the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea. "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted," State v. Xie (1992),62 Ohio St.3d 521, 527, but "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." Id., paragraph one of the syllabus. Accordingly, the court is to hold a hearing to determine whether a reasonable and legitimate basis exists for withdrawing the plea. "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." Id., paragraph two of the syllabus.
Here, the trial court allowed defendant to explain why defendant believed he was entitled to withdraw his guilty plea. Defendant set forth the same reasons he had given the trial court before entering his guilty plea. As noted, none of the reasons defendant offered supports either the continuance, or his motion to withdraw his guilty plea. Moreover, defendant was represented by counsel at the time of his guilty plea, and was afforded a full Crim.R. 11 hearing before he entered the guilty plea. Coupling those factors with defendant's opportunity to fully explain the bases for his motion to withdraw and the lack of merit in them, the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea. State v. Peterseim (1980), 68 Ohio App.2d 211. "The record simply does not support the conclusion that the [defendant] had misconceived the charges against him, or misunderstood the effect of a guilty plea due to either drug impairment or coercion of any kind." State v. Borden (1988), Coshocton App. No. 87-CA-10, citing Ward v. United States (C.A.6, 1940), 116 F.2d 135, 136. Defendant's third assignment of error is overruled.
Having overruled each of defendant's three assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
TYACK, P.J., and DESHLER, J., concur.